# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARRUM TECHNOLOGIES, LLC<br><br>      Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>      Defendant. | C.A. No. 18-1647-RGA<br><br>██████████ |

## PLAINTIFF'S OPENING DISCOVERY DISPUTE LETTER

Dated: June 10, 2022

John Hughes (admitted *pro hac vice*)
Andrew Baak (admitted *pro hac vice*)
Daniel R. Brody (admitted *pro hac vice*)
Jason Murray (admitted *pro hac vice*)
Meg Fasulo (admitted *pro hac vice*)
Bartlit Beck LLP
1801 Wewatta Street, Ste. 1200
Denver, CO 80202
Telephone: (303) 592-3100
john.hughes@bartlitbeck.com
andrew.baak@bartlitbeck.com
dan.brody@bartlitbeck.com
jason.murray@bartlitbeck.com
meg.fasulo@bartlitbeck.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Rebecca T. Horwitz (admitted *pro hac vice*)
BARTLIT BECK LLP
Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
Tel.: (312) 494-4400
Fax: (312) 494-4440
rebecca.horwitz@bartlitbeck.com

*Counsel for Plaintiff Carrum Technologies, LLC*

Dear Judge Andrews,

    Carrum moves under Fed. R. Civ. P. 37(a) for an order compelling discovery from Ford. First, Carrum seeks an order that Ford must immediately provide deposition dates and 30(b)(6) topic designations for noticed Ford witnesses. Second, Carrum seeks an order that Ford must tell Carrum whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as an invalidity reference immediately and, if it is relying on the source code, it must produce the source code in short order in a way that is convenient for Carrum's review, or be barred from relying ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Third, Carrum seeks an order that Ford adequately and completely respond to Carrum's propounded interrogatories. Forth, Carrum seeks an order that Ford must produce portions of Simulink algorithm files to Carrum either natively or in PDF format.

    I.    Carrum first requested deposition dates for three Ford witnesses on January 5, 2022. Ex. A, Jan. 5, 2022 Murray E-mail to Ford. As of today, June 10th, Ford has still not provided a deposition date for one of those witnesses, Shane Larkin. Carrum requested dates for nine additional Ford witnesses on May 6, 2022, and added a tenth witness on May 13, 2022. Ex. B, May 13, 2022 Horwitz E-mail to Ford. Given the July 1 close of fact discovery (which the parties have discussed could be moved slightly), Ford's lack of response to Carrum's dates request prompted Carrum to serve deposition notices for all witnesses on May 17th. Ford indicated to Carrum that it cannot do the dates noticed for the first three witnesses (whose noticed dates have all now passed), but has not confirmed a date for a *single one* of the ten witnesses.[1] Ex. C, June 1, 2022 Horwitz E-mail to Ford. Additionally, Carrum still does not know which 30(b)(6) topics will be assigned to a given witness, hampering its ability to prepare for depositions. With only weeks remaining in fact discovery, the Court should order Ford to provide deposition dates for all witnesses and designations for its 30(b)(6) deposition within 3 days.

    II.    Ford has not informed Carrum if it will be relying on internal Ford material to support its invalidity contentions. A defendant must disclose the invalidity references upon which it is relying during fact discovery. And courts frequently exclude invalidity references when a party does not abide by its disclosure requirements. *See, e.g.*, *Bridgestone Sports Co. Ltd v. Acushnet Co.*, 2007 WL 521984, *5 at n1 (D. Del. 2007)(collecting cases); *see also*, *Praxair, Inc. v. ATMI, Inc.*, 2005 WL 3159054, *4 (D. Del. 2005). Here, Ford has had over 12 months to decide if it is going to rely on ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as an invalidity reference, but refuses to confirm to Carrum whether it will rely on that code. Carrum has *repeatedly* requested Ford's confirmation of reliance and, if necessary, production. *See* Ex. D, April 13, 2022 Letter from Horwitz to Spencer and Munn Schebel (identifying deficiencies in Ford's RFP and ROG responses given Ford's reliance on ▮▮▮▮▮▮▮▮ in its invalidity contentions); *see also* Ex. E, April 25, 2022 Horwitz E-mail to Spencer; Ex. F, May 20, 2022 Horwitz E-mail to Spencer; Ex. G, May 26, 2022 Horwitz E-mail to Spencer. It does not matter that Carrum is aware that Ford may rely on ▮▮▮▮▮▮▮▮▮▮, Carrum has no way to obtain the code itself and this District has repeatedly held that "prior art must be disclosed during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference." *Praxair, Inc. v. ATMI, Inc.*, 2005 WL 3159054, *4 (D. Del. 2005); *see also Bridgestone Sports Co. Ltd v. Acushnet Co.*, 2007 WL 521984, *5 (D. Del. 2007).

---

[1] Carrum has offered and confirmed deposition dates for its 30(b)(6) witness and will also be taking depositions of FCA concurrently with Ford. Therefore, Ford's continued refusal to work with Carrum to schedule depositions is putting the schedule at risk. Ford's counsel e-mailed Carrum's counsel on June 8th indicating they would be providing dates, but as of today, none have been provided.

There are only weeks remaining in fact discovery and only two months before opening expert reports. Therefore, if Ford is going to rely on the ███████████, Carrum requests that the Court order, under Fed. R. Civ. P. 37(a), Ford to produce either the native source code file to Carrum or that Ford produce a hyper-linked, searchable PDF of the code. It is too late-in-the-game, and Ford has played coy for too long, to require Carrum to comply with the Protective Order source code provisions for 20-year-old code. *See* Ex. D; *see also* Ex. E; Ex. F; Ex. G. Carrum and its expert will not be able to appropriately review the code if onerous travel is required for review.

      III.    Carrum has propounded twenty Common Interrogatories on Ford and Ford has either not responded, or insufficiently responded, to twelve of them. Carrum requests an order under Fed. R. Civ. P. 37(a) compelling an answer.

In particular, Ford has objected that Interrogatories 17, 18, and 19 are premature contention interrogatories. *See* Ex. H, Ford's Response to Carrum's Fifth Set of Common Interrogatories. Interrogatories 17, 18, and 19 are directed at better understanding Defendants' cursory invalidity contentions. Carrum has attempted to set a date for supplementation of contention interrogatories, but Ford has yet to confirm any date. At time point, years into discovery and only three weeks out from the close of fact discovery, contention interrogatories are not premature. *See In re Wilmington Trust Securities Litig.*, 2017 WL 2457456, *2 (D. Del. 2017) ("Regardless of whether [interrogatories] are contention interrogatories, they are not premature because substantial discovery, including nearly three years of document production, is almost complete and the responded would contribute meaningfully to the progress of the case."). Ford has advanced 102(f) and 102(g) invalidity defenses and identified a witness who is going to testify about those defenses. But Ford's description of its defenses in its Invalidity Contentions are thin at best and Carrum's interrogatories simply seek to clarify invalidity theories that should have been adequately disclosed in Ford's contentions.

In addition, for Interrogatories 2, 3, 5, 6, 7, 8, 9, 13, and 20 Ford's responses are deficient. *See* Ex. I, Ford's First Supplemental Objections and Responses to Carrum's First Common Interrogatories; Ex. J, Ford's Response to Carrum's Third Common Interrogatories; Ex. K, Ford's Response to Carrum's Fourth Common Interrogatories; Ex. L, Ford's Supplemental Response to Carrum's Second and Third Common Interrogatories.

For example, Interrogatory 8 seeks information relating to the suppliers that provide sensors, components, parts, control modules, etc. that relate to the Accused Products. Carrum has been asking Ford to supplement its response for almost a year. *See* Ex. M, Sept. 16, 2021 Tanner Letter to Spencer (identifying a June 11, 2021 letter requesting a supplement to Interrogatory No. 8). Carrum has agreed to narrow the scope of Interrogatory 8 to a limited subset of components identified in relevant documents and Carrum's infringement contentions (*e.g.*, ███████████████████████████████████████████████████) in order to obtain a satisfactory response. *See* Ex. N, May 5, 2022 Horwitz E-mail to Spencer. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ while simultaneously denying Carrum access to the evidence about that argument.

Similarly, Interrogatory 13 seeks information relating to indemnification. *See* Ex. J. ████████████████████████████████████████████████████████████ But that is not the

2

scope of Carrum's Interrogatory. ▮▮▮

Interrogatories 2, 3, 5, 6, 7, 9, and 20 are typical interrogatories that are asked and answered in patent litigation (such as non-infringing alternatives and unenforceability allegations) but for which Ford's answers are incomplete or non-responsive. Ford's non-answers are simply discovery games meant to frustrate Carrum's ability to develop its case.[2] *See Scovill Mfg. Co. v. Sunbeam Corp.*, 357 F.Supp. 943, 947-49 (D. Del. 1973) (requiring a party to provide responsive answers to interrogatories, even contention interrogatories or those that relate to the application of law to fact).

IV. Carrum seeks an order compelling Ford to produce relevant parts of its flow-chart Simulink models to Carrum either natively or in a hyper-linked, searchable PDF. Simulink models are high-level functional architecture that provides a rough outline of the code for an algorithm. Ford has, thus far, forced Carrum and its expert to jump through the Source Code provisions in the Protective Order during Covid-19 to review these Simulink models (which are not C-code, the type of code usually protected by Source Code procedures).[3] Further, the models provided are not all the relevant models to the litigation because, in Carrum's understanding, ▮▮▮ which is central to Carrum's infringement contentions—was not provided. *See* Ex. N; Ex. G. Ford recognizes the importance of that feature to this litigation because ▮▮▮

But Ford's discovery delays, refusal to answer interrogatories, and limited provision of Simulink models (restricting the models provided to a subset of the ones needed) mean that Carrum requires that these models be produced to it in a manner that is more usable and efficient.[4] It is because of Ford's delays and obfuscation that Carrum hasn't had the necessary answers to investigate the sufficiency of the models to which Ford provided access. But Carrum has now identified that it requires access to other specific modules and needs to be able to access them efficiently based on the limited time remaining in fact discovery.

Accordingly, for the reasons set forth above, Carrum respectfully requests an order compelling Ford to (1) provide deposition dates and 30(b)(6) topic assignments, (2) inform Carrum whether it is relying on internal Ford source code and produce that source code in an easily usable format, (3) supplement its responses to Interrogatories 2, 3, 5, 6, 7, 8, 9, 13, 17, 18, 19, 20, and (4) produce relevant portions of the Simulink algorithms natively.

---

[2] For Interrogatory 2, Ford has not updated its response regarding claims 10 and 11.
[3] ▮▮▮, just not the ones most relevant to the case. Ford's counsel maintains that there is something different between the models produced and what Ford would provide under the Source Code procedure.
[4] For example, Ford missed the substantial completion deadline. Though the parties entered an amended scheduling order in January 2022, the original substantial completion date was October 22, 2021. As of that date, Ford had only produced 5,241 out of 34,790 now-produced documents. And Ford made major productions on November 30, 2021, February 7, 2022, February 17, 2022, and April 7, 2022. In fact, Ford made another important production on May 10, 2022. And Ford's early productions had metadata issues that were not corrected until January and May 2022. *See* Ex. D.

                                                Respectfully submitted,

                                                /s/ Michael J. Fanran

                                                Michael J. Farnan

cc: Counsel of Record (Via E-Mail)