IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| Carrum Technologies, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Ford Motor Company, <br><br> Defendant. | C.A. No. 18-1647-RGA-SRF <br><br> **FILED UNDER SEAL** |

**CARRUM'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE FORD'S RELIANCE ON UNDISCLOSED PURPORTED PRIOR ART**

Dated: March 16, 2023

Rebecca T. Horwitz (admitted *pro hac vice*)
Mark Levine (admitted *pro hac vice*)
BARTLIT BECK LLP
Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
Tel.: (312) 494-4400
Fax: (312) 494-4440
rebecca.horwitz@bartlitbeck.com
mark.levine@bartlitbeck.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Andrew Baak (admitted *pro hac vice*)
John Hughes (admitted *pro hac vice*)
Jason Murray (admitted *pro hac vice*)
Taylor Kelson (admitted *pro hac vice*)
Bartlit Beck LLP
1801 Wewatta Street, Ste. 1200
Denver, CO 80202
Telephone: (303) 592-3100
andrew.baak@bartlitbeck.com
john.hughes@bartlitbeck.com
jason.murray@bartlitbeck.com
taylor.kelson@bartlitbeck.com

*Counsel for Plaintiff Carrum Technologies, LLC*

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ............................................................................2

STATEMENT OF FACTS ............................................................................................................3

LEGAL STANDARD ...................................................................................................................6

ARGUMENT .................................................................................................................................8

I.      Ford's Late Disclosure of Sixteen Alleged Prior Art References Violates the Court's Scheduling Orders and Fed. R. Civ. P. 16 and 26 ..............................................................8

II.     The *Pennypack* Factors Favor Striking .............................................................................10

        A.     Carrum Is Prejudiced by the Late Disclosures ......................................................10

        B.     Carrum Cannot Cure the Prejudice ........................................................................11

        C.     Further Fact Discovery Could Disrupt the Trial Schedule ....................................13

        D.     Ford's Late Disclosure Was Willful .......................................................................13

        E.     Excluding The Late-Disclosed References Will Not Prejudice Ford .....................14

CONCLUSION ............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Bridgestone Sports Co. v. Acushnet Co.*, 2007 WL 521894 (D. Del. Feb. 15, 2007)........................................7

*Cf. TQ Delta LLC v. Adtran, Inc.*,
   C.A. No. 14-954-RGA (D. Del. Sept. 12, 2019)..............................................................................13

*Merck Sharp & Dohme Corp. v. Sandoz, Inc.*,
   2014 WL 1494592 (D.N.J. Apr. 16, 2014) ........................................................................................6

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
   559 F.2d 894 (3d Cir. 1977)....................................................................................................passim

*Praxair, Inc. v. ATMI, Inc.*,
   2005 WL 3159054 (D. Del. Nov. 28, 2005) ......................................................................................6

*Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306 (Fed. Cir. 2008)..............................................................6

*TQ Delta LLC v. 2Wire, Inc.*, C.A. No. 13-1835-RGA (D. Del. Dec. 10, 2020) .........................................6

*Vehicle IP, LLC v. Werner Enterprises, Inc.*,
   2013 WL 4786119 (D. Del. Sept. 9, 2013) ........................................................................................7

*Verinata Health, Inc. v. Sequenom, Inc.*,
   2014 WL 4100638 (N.D. Cal. Aug. 20, 2014) ..................................................................................6

*Vifor Fresenius Medical Care Renal Pharma Ltd. v. Lupin Atlantis Holdings*,
   C.A. No. 18-390-MN (D. Del. Feb. 6, 2020) ....................................................................................6

**Federal Rules**

Fed. R. Civ. P. 16..........................................................................................................1, 6, 7, 8

Fed. R. Civ. P. 26..........................................................................................................1, 7, 8, 9

Fed. R. Civ. P. 37...................................................................................................................passim

**Statutes**

35 U.S.C. § 101..........................................................................................................................14

35 U.S.C. § 102.................................................................................................................. 1, 3, 5

35 U.S.C. § 103............................................................................................................1, 3, 4, 14

35 U.S.C. § 112..........................................................................................................................14

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 16, 26, and 37, the Court's Additional Scheduling Order (D.I. 55), and the Court's Revised Sixth Stipulation to Amend Scheduling Order (D.I. 194), Plaintiff Carrum moves to strike all reference to, and all invalidity defenses based on, sixteen Ford documents that Ford relies on as prior art, because they were not disclosed as required in invalidity contentions or interrogatory answers.

In his opening expert report, Ford's technical expert Dr. William Messner lists over 150 alleged prior art references, many of which he then relies on to assert invalidity opinions under 35 U.S.C. §§ 102–103. Ex. A, Opening Expert Report of William C. Messner, Ph.D., Regarding Invalidity of U.S. Patent Nos. 7,512,475 and 7,925,416 (hereinafter the "Messner Report") (highlighting added) at 127–138 (listing alleged prior art references). Sixteen of these references are either internal Ford documents or Ford patents that were not disclosed by Ford in any of its invalidity contentions. Disclosure of these references for the first time in the Messner Report violates the Court's Scheduling Orders (D.I. 55, D.I. 194) and Fed. R. Civ. P. 16 and 26.

Allowing Ford to add these purported references at this late stage of the case will cause significant prejudice to Carrum. Notably, Carrum did not ask Ford witnesses in depositions about many of the undisclosed references, many of which are internal Ford reports that Dr. Messner claims are prior art under 102(b) public use or 102(g) theories. For example, Dr. Messner relies on an internal Ford report titled Logic Description: Compute Engine Torque Reduction, related to a sub-system of the Ford Curve Control system, that is ostensibly dated May 3, 2002. Carrum asked Ford engineer Daniel Eisele about a similar document related to a different sub-system, also ostensibly dated May 3, 2002. Mr. Eisele testified that the purported date was incorrect, and that the document was actually from 2010 (and therefore not prior art). Carrum had no reason to ask Mr. Eisele about the date of the Engine Torque Reduction document because Ford did not tell Carrum that it was relying on this

1

document as prior art in any of its invalidity contentions. The inability to ask these questions in depositions prejudices Carrum.

On the other hand, Ford will not be prejudiced by striking invalidity theories that rely on these products because they form the basis for only a fraction of the myriad of invalidity grounds raised in the 1,084-page Messner Report. Therefore, Carrum respectfully requests that the Court strike all portions of the Messner Report that rely on these references and preclude Ford from relying on them at trial, as the basis of or as support for any assertion that any claim of the asserted patents is invalid.

## NATURE AND STAGE OF PROCEEDINGS

On October 23, 2018, Carrum sued Ford for infringement of Carrum's U.S. Patent Nos. 7,512,475 and 7,925,416. D.I. 1. The Court's Additional Scheduling Order (D.I. 55) set deadlines for service of initial invalidity contentions and ordered that "[t]he parties may supplement these disclosures [including invalidity contentions] through the end of fact discovery." *Id.* at 3. The Court's Revised Sixth Stipulation to Amend Scheduling Order (D.I. 194) identifies the operative Fact Discovery Cut Off date of August 12, 2022. *Id.* at 2. Fact discovery has been closed for nearly seven months.

Ford's invalidity expert, Dr. William Messner, served a nearly 3,000-page opening report on the alleged invalidity of the asserted patents on January 9, 2023. Carrum complained that Dr. Messner advanced an unreasonable number of prior art arguments, and included references that were not previously listed in invalidity contentions (including the sixteen at issue in this motion). The parties reached an agreement for Dr. Messner to serve an amended report, to reduce the number of prior art arguments, and to remove arguments regarding claims that Carrum no longer asserted in its expert's infringement report. Ex. B (email correspondence between counsel regarding amended report). Dr. Messner served an amended opening report on February 8, 2023, which is the operative version of the Messner Report.

## STATEMENT OF FACTS

Dr. Messner offers the opinion that the asserted claims, which are claim 5 of U.S. Patent No. 7,512,475 and claims 6 and 10–12 of U.S. Patent No. 7,925,416, are invalid under 35 U.S.C. §§ 102 and 103. In support of this argument, he cites or references materials including the following sixteen Ford internal reports or patents that are the subject of this motion:

| Document | Bates Number |
| --- | --- |
| Curvature Control Logic Description | FORD_CARRUM000736136 |
| ETR Logic Description | FORD_CARRUM000735506 |
| Ford Technical Report, "Curvature Control for Enhancing Understeer Performance" | FORD_CARRUM000730032 |
| Ford's "Curvature Control Logic Description" | FORD_CARRUM000738525 |
| Ford's "Equation Section 1 Euler Analysis" | FORD_CARRUM000730443 |
| Ford's "RSC Logic Flow Description" | FORD_CARRUM000661243 |
| History of Vehicle Stability Control Development within Active Safety Department | FORD_CARRUM000101895 |
| Software Requirements Document, MY2004 Land Rover L319 / L320, ACC3 Controller | FORD_CARRUM000738697 |
| U.S. Patent No. 6,073,065 | FORD_CARRUM_PUBLIC_00006146 |
| U.S. Patent No. 6,122,568 | FORD_CARRUM_PUBLIC_00006160 |
| U.S. Patent No. 6,185,485 B1 | FORD_CARRUM_PUBLIC_00006192 |
| U.S. Patent No. 6,263,261 B1 | FORD_CARRUM_PUBLIC_00006197 |
| U.S. Patent No. 6,556,908 B1 | FORD_CARRUM_PUBLIC_00006304 |
| U.S. Patent No. 6,853,902 B2 | FORD_CARRUM_PUBLIC_00006567 |
| U.S. Patent No. 6,915,193 B2 | FORD_CARRUM_PUBLIC_00006612 |
| U.S. Patent No. 6,963,797 B2 | FORD_CARRUM_PUBLIC_00006639 |

Dr. Messner cites or otherwise relies on these sixteen references in at least paragraphs[1] 457–460, 463–475, 476–513, 677–678, 680–685, 691–698, 715–720, 724, 729–734, 739–744, 746, 750–757,

---

[1] Carrum has endeavored to compile a complete list of paragraphs in the Messner Report which refer to, cite, or otherwise rely on the sixteen untimely references identified above. The Messner Report attached as Exhibit A includes highlighting corresponding to the listed paragraphs. Due to the length and complexity of the Messner Report, Carrum cannot be certain that this list accurately captures every paragraph of the Messner Report that includes reliance on the untimely references. For avoidance of doubt, Carrum moves to strike all portions of the Messner Report that refer to, cite, or otherwise rely on any of the untimely references.

759, 764–773, 775, 1425–1428, 1439–1441, 1474–1479, 1497–1502, 1505, 1515–1518, 1529–1530, 1537–1541, 1550, 1566, 1588, 1726, 1774, 1836, 1842–1847, 1852–1855, 1862–1865, 1875, 1884, 1888–1890, 1892, 1916, 1950, 1952–1957, 1962–1965, 1983–1987, 1992–1993, 1999–2001, 2005, and 2017 of the Messner Report. Carrum accordingly moves to strike at least these paragraphs, including all accompanying citations and figures. The Messner Report attached as Exhibit A includes highlighting corresponding to the listed paragraphs.

To the extent that these paragraphs fall within § 103 combinations asserted by Dr. Messner, Carrum moves to strike only the portions of these combinations which rely on the references that were not timely disclosed. For some combinations, this will result in striking an asserted reference from a § 103 combination. *See e.g.,* Ex. A, Messner Rept. at ¶¶ 1587–1833 (asserting the combination of the '515 Engelman patent [timely disclosed] in view of the '668 Engelman patent [timely disclosed], Salib [U.S. Patent No. 6,963,797, not timely disclosed], and/or the knowledge of a POSA). For other combinations, such as those asserting Ford Curve Control, this will restrict the scope of references that Ford may rely on as allegedly describing a prior art system to those references which were timely disclosed. *See e.g.,* Ex. A, Messner Rept. at ¶¶ 689–777 (asserting the combination of Ford Curve Control in view of Ford ACC Inhibit Resume and/or the knowledge of a POSA).

Despite ample opportunity to do so, Ford failed to disclose its reliance on these sixteen references during fact discovery. None of the sixteen references appeared anywhere in Ford's three separate sets of invalidity contentions:

1. Defendants' Initial Invalidity Contentions (served May 28, 2021) (Ex. C, App'x A, listing prior art references)

---

Additionally, certain paragraphs of the Messner Report refer to, cite, or otherwise rely on an untimely reference as well as other references which Carrum does not contend were not timely disclosed. Carrum moves to strike only the portions of such paragraphs that refer to, cite, or otherwise rely on any of the untimely references.

4

      2.      Defendants' First Supplemental Invalidity Contentions (served May 31, 2022) (Ex. D, App'x A, listing prior art references)

      3.      Ford's Second Supplemental Invalidity Contentions (served August 12, 2022) (Ex. E, claim charts listing prior art references)

Nor did Ford disclose these sixteen references in Ford's answer to Carrum's interrogatory concerning Ford's bases for asserting that the asserted patents are invalid. Ex. F, Ford's Supplemental Response to Carrum's Interrogatory No. 2 (Aug. 12, 2022).

Several of these references allegedly describe the function of certain Ford systems, which are alleged to have been in use prior to the priority date of the asserted patents. For example, Dr. Messner alleges that the accused Ford system known as Curve Control, which was first available to the public on the 2011 Ford Explorer, "is prior art to each of the Asserted Patents under at least 35 U.S.C. § 102(a), 102(b), and 102(g)." Ex. A, Messner Rept. at ¶ 457. Dr. Messner relies primarily on the first seven documents listed above as allegedly disclosing the functionality of Curve Control. *See e.g. id.* at ¶¶ 457–475 (citing FORD_CARRUM000101895, FORD_CARRUM000661243, FORD_CARRUM000730032, FORD_CARRUM000735506, FORD_CARRUM000736136, and FORD_CARRUM000738525); *id.* at ¶¶ 674–777 (asserting invalidity of claim 5 of the '475 patent over, *inter alia*, Curve Control). None of these documents were previously disclosed to Carrum as a purported basis for invalidity.

Notably, Ford knew about each and every one of these references long before Dr. Messner drafted his report (indeed, long before this litigation commenced). All sixteen identified references are either Ford internal documents, or U.S. Patents assigned to Ford (or entities owned by Ford). Despite Ford's knowledge of these references, Ford never included these references in its various invalidity contentions or interrogatory responses. Nor did Ford move to supplement its Second Supplemental Invalidity Contentions after the close of fact discovery.

5

## LEGAL STANDARD

A party may not introduce new theories of invalidity, including new prior art references, for the first time through an expert report. "Prior art references must be disclosed during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference." *Praxair, Inc. v. ATMI, Inc.*, 2005 WL 3159054, at *4 (D. Del. Nov. 28, 2005), *rev'd on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008); *see also TQ Delta LLC v. 2Wire, Inc.*, C.A. No. 13-1835-RGA (D. Del. Dec. 10, 2020) (D.I. 1522 at 3–4) (finding no excuse for delay and some prejudice to plaintiff, and striking defendant's untimely reliance on prior art products); *Vifor Fresenius Medical Care Renal Pharma Ltd. v. Lupin Atlantis Holdings,* C.A. No. 18-390-MN (D. Del. Feb. 6, 2020) (D.I. 210 at 20) ("[I]t's generally the rule in this district and in my court that a party must fairly disclose its invalidity theories and supporting evidence during fact discovery in order to present those at a trial. A necessary corollary of that rule is that invalidity contentions must disclose the prior art that a party intends to use in presenting its invalidity defenses."); *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, 2014 WL 1494592, at *11-12 n.6 (D.N.J. Apr. 16, 2014) ("[P]ermitting [Defendant] to assert new bases for its obviousness defense for the first time in its expert report, approximately seven months after its Invalidity Contentions had been served, would cause prejudice to Merck by requiring it to spend great time and expense reformulating its Responses to Sandoz's Invalidity Contentions and rethinking its litigation strategy."); *Verinata Health, Inc. v. Sequenom, Inc.*, 2014 WL 4100638, *3 (N.D. Cal. Aug. 20, 2014) ("a party may not use an expert report to introduce. . . new prior art references not disclosed in the parties' . . . invalidity contentions.").

Under Fed. R. Civ. P. 16, a party is required to adhere to the Court's scheduling and pretrial orders. *See* Fed. R. Civ. P. 16 (f). When a party fails to adhere to the Court's scheduling order, Fed. R. Civ. P. 16 (f)(1)(C) provides that the Court may issue any sanction authorized by Rule 37 (b)(2)(A)(ii–vii), which sanctions include exclusion of evidence at trial. *See* Fed. R. Civ. P. 16 (f)(1)(C); Fed. R. Civ.

P. 37 (b)(2)(A)(ii); *see also Vehicle IP, LLC v. Werner Enterprises, Inc.*, 2013 WL 4786119, at *1 (D. Del. Sept. 9, 2013) ("Under Rule 16 (f), the court may impose sanctions if, *inter alia*, a party of its attorney 'fails to obey a scheduling order or other pretrial order.'"). Pursuant to Fed. R. Civ. P. 26 (e), a party is required to supplement or correct disclosures made under 26 (a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26 (e)(1)(A). When a party fails to provide information as required by Fed. R. Civ. P. 26 (e), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37 (c)(1); *see also Vehicle IP*, 2013 WL 4786119, at *1 ("Under Rule 37 (c)(1), a party that fails to comply with Rule 26(a) or (e) (regarding failure to disclose or supplement) 'is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'"). Pursuant to Fed. R. Civ. P. 37 (c)(1)(C), the Court may impose appropriate sanctions, including the exclusion of evidence under Rule 37 (b)(2).

Courts in the Third Circuit consider the five "*Pennypack* factors" when deciding whether to preclude evidence:

> (1) the prejudice or surprise to a party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood of disruption of the trial schedule; (4) bad faith or willfulness involved in not complying with the disclosure rule; and (5) the importance of the evidence to the party offering it.

*Bridgestone Sports Co. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)). In "sophisticated, complex litigation involving parties represented by competent counsel," courts have been "less indulgent" in applying the *Pennypack* factors and are "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co.*, 2007 WL 521894, at *4.

7

# ARGUMENT

The Court should strike Ford's invalidity defenses, including portions of the Messner Report, that cite to or rely on the newly disclosed references under Rule 37. Ford's belated disclosure of these references violates the Court's scheduling orders and Rules 16 and 26, and analysis of the *Pennypack* factors favors exclusion.

## I. Ford's Late Disclosure of Sixteen Alleged Prior Art References Violates the Court's Scheduling Orders and Fed. R. Civ. P. 16 and 26

The Court should strike any defenses relying on the newly disclosed references under Fed. R. Civ. P. 37 and preclude reference to such purported products because Ford's belated disclosure thereof violates the Court's Additional Scheduling Order which states:

> [3.c.]iv. On or before May 28, 2021, Defendants shall produce their invalidity contentions for each asserted claim, as well as the known related invalidating references. (e.g., publications, manuals and patents.)
>
> v. The parties may supplement these disclosures through the end of fact discovery identified below.

D.I. 55 at 3. Fact discovery has been closed since August 12, 2022. D.I. 194 at 2. Between May 28, 2021, and August 12, 2022, Ford served three sets of invalidity contentions. Ford never disclosed reliance on any of these sixteen documents as invalidity references, and Ford never sought leave to supplement its invalidity contentions to add any of those references. As such, Ford has failed to comply with Rule 26 (e)(1), which requires:

> A party who has made a disclosure under Rule 26 (a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> [I]n a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

Fed. R. Civ. P. 26 (e)(1). It is far too late now for Ford to inject new invalidity theories and references into the case through Dr. Messner's expert report.

8

Ford's belated disclosure is not substantially justified or harmless. To the contrary, Carrum will be substantially and incurably prejudiced. Carrum is now shut out from taking fact discovery on the newly disclosed references. This is particularly prejudicial to Carrum with respect to the references which are Ford internal engineering documents. Unlike prior art patents, which purport to include all relevant disclosures within their four corners, invalidity defenses that rely on Ford engineering documents (and the alleged prior art systems that such documents purportedly describe) would have required Carrum to take extensive and detailed fact discovery in order to appropriately respond. Given Ford's late disclosure, Carrum has no ability to seek testimony from engineers who purportedly authored these documents and designed these systems; determine to what extent these late-disclosed references actually describe systems that were reduced to practice; determine whether, when, and in what form these alleged systems were purportedly reduced to practice, made public, or sold before the invention date; or investigate any other facts that could disprove or impeach the factual assertions Dr. Messner has made about the systems and the documents that allegedly describe them in his expert report.

If the late-disclosed defenses are not stricken, Carrum will suffer substantial, incurable prejudice. Ford's untimely disclosure prevents Carrum from seeking the information that it needs to fully and fairly protect its valuable patent rights. Since Ford failed to adhere to the Court's scheduling order as required by Rule 16, and its duty to timely supplement its disclosures as required by Rule 26 (e), Rule 37 expressly allows this Court to strike all of Ford's defenses that rely on the untimely references and the portions of the Messner Report that cite to and rely on such references. See Fed. R. Civ. P. 37 (b)(2)(A)(ii–iii). As discussed in more detail below, the *Pennypack* factors heavily weigh in favor of granting Carrum's motion.

## II. The *Pennypack* Factors Favor Striking

### A. Carrum Is Prejudiced by the Late Disclosures

The first *Pennypack* factor strongly favors exclusion. Carrum will be irreparably harmed if Dr. Messner and Ford are allowed to rely on the newly disclosed references. Purported prior art systems raise unique factual issues for which timely disclosure and an adequate opportunity for discovery and analysis is critical. As explained, fact discovery closed on August 12, 2022—over six months ago. Carrum never had an opportunity to propound additional discovery requests regarding these references (and, in the case of the internal Ford documents, the prior art systems they allegedly describe), or seek testimony from engineers who purportedly authored these documents and designed these systems.

Without the timely opportunity to take this discovery, Carrum has been deprived of the opportunity to present compelling evidence that the references do not disclose certain claim elements, do not accurately describe the alleged prior art systems, or in some cases do not pre-date the priority date of the asserted patents at all. For example, Carrum has reason to believe that the date printed on the face of one of Ford's belatedly disclosed references (ETR Logic Description, FORD_CARRUM000735506) is incorrect, and that this document in fact does not predate the priority date of the asserted patents. Dan Eisele, a Ford engineer, is the alleged author of both FORD_CARRUM000735506 and another belatedly disclosed reference, FORD_CARRUM000736136. During its deposition of Mr. Eisele, Carrum asked Mr. Eisele about the date associated with FORD_CARRUM000736136.[2] Mr. Eisele testified that the date printed on the face of FORD_CARRUM000736136 was incorrect, and attributed a date to that document which significantly post-dates the priority date of the asserted patents. Ex. G, Eisele Dep. Tr. at 131:9–19.

---

[2] Carrum asked Mr. Eisele about FORD_CARRUM000736136 because Carrum had independently identified this document as a document of interest, not because Ford had provided any disclosure that Ford intended to rely on FORD_CARRUM000736136 as an invalidity reference.

10

Various circumstantial evidence (including the similarity of FORD_CARRUM000735506 and FORD_CARRUM000736136, the fact that Mr. Eisele is the purported author of both documents, and the fact that both documents have electronic file names reflecting creation in 2010) indicates that the date printed on FORD_CARRUM000735506 is similarly incorrect. However, Carrum was deprived of the opportunity to confirm this with Mr. Eisele, or any Ford witness, because Ford had not previously disclosed its reliance on FORD_CARRUM000735506.

Likewise for the late-disclosed references which are patents owned by Ford Motor Company, many of the inventors of these patents (including Mr. Eisele, Mr. Salib, and others) are Ford employees who were or might have been deposed by Carrum in this matter. By failing to timely disclose its reliance on these references, Ford has prejudiced Carrum by preventing Carrum from seeking deposition testimony from these inventors about the disclosure and scope of their patents, and from potentially seeking additional discovery based on that testimony.

Consequently, Carrum will be irreparably prejudiced if Ford is allowed to rely on these references, because Carrum was prevented from developing evidence tending to disprove that these references are invalidating, or that they even qualify as prior art. This is especially significant given that it is Ford's burden under the clear and convincing standard to show that all facts necessary to its defenses based on these purported products are highly probable. This *Pennypack* factor weighs in favor of striking the portions of the Messner Report that cite to and rely on these references and precluding Ford and Dr. Messner from relying on these references at trial.

### B. Carrum Cannot Cure the Prejudice

The second *Pennypack* factor also favors exclusion. Fact discovery closed on August 12, 2022, expert discovery closes on April 28, 2023, summary judgment and *Daubert* motions are due on May 15, 2023, and trial is scheduled for November 2023. Carrum has no ability to cure the prejudice Ford caused by the late identification of these references, such as by taking deposition testimony from the

11

purported authors and inventors of these references and seeking fact discovery from Ford regarding these references.

Ford's counsel has refused to withdraw Dr. Messner's invalidity opinions based on the previously undisclosed references, stating that there is no prejudice to Carrum because all but one of these references[3] "relate to Ford stability control systems," and that "Carrum has been on notice since May 28, 2021 that Ford intended to rely on vehicle stability control prior art, including its own development of vehicle stability control systems." See Ex. H (Email from L. Spencer to T. Kelson) (Feb. 22, 2023) at 1. Ford's position appears to be that, because Ford previously disclosed its potential reliance on "Ford stability control systems, including the Curve Control feature of stability control," Carrum was therefore on notice of Ford's reliance on *all documents* that purport to include *any disclosure* related to Ford stability control systems, and that Carrum was obligated to take discovery concerning this entire universe of documents. This is transparently unreasonable. Ford has produced nearly 800,000 pages of documents in this litigation. The Court should not permit Ford to make vague disclosures regarding its reliance on complicated alleged prior art systems developed over many years, and then ambush Carrum after the close of fact discovery with the particular documents that Ford intends to rely on as allegedly describing these systems.

Therefore, this *Pennypack* factor weighs in favor of striking the references, striking the portions of the Messner Report that cite to and rely on those references, and precluding Ford and Dr. Messner from relying on them at trial.

---

[3] The reference titled "Software Requirements Document, MY2004 Land Rover L319 / L320, ACC3 Controller" (FORD_CARRUM000738697) does not relate to "Ford stability control systems." Ford's counsel similarly alleged that Carrum was on notice of Ford's reliance on "prior art ACC systems, including Delphi's ACC3 [system]," but Ford's counsel similarly never alleged that this particular document was previously disclosed.

12

### C. Further Fact Discovery Could Disrupt the Trial Schedule

Trial in this matter is scheduled for November 2023. D.I. 194. Allowing Ford and Dr. Messner to rely on the sixteen newly disclosed references could disrupt and delay the trial date because it would necessarily require additional fact discovery and potentially additional expert discovery, for which there may not be sufficient time before trial. *Cf. TQ Delta LLC v. Adtran, Inc.*, C.A. No. 14-954-RGA (D. Del. Sept. 12, 2019), D.I. 807 at 3–4 (finding that, where defendant did not have time to conduct independent discovery (including discovery from a third party) the prejudice to the defendant could not be cured before trial). The schedule in this case has been adjusted multiple times, and it would be difficult to perform additional discovery before the scheduled trial date in less than nine months.

Consequently, this *Pennypack* factor weighs in favor of striking the references, striking the portions of the Messner Report that cite to and rely on the references, and precluding Ford and Dr. Messner from relying on them at trial.

### D. Ford's Late Disclosure Was Willful

Ford has no valid excuse for its belated disclosure of these sixteen references, or of the invalidity grounds that rely on such references, because none of these references are newly discovered. Rather, Ford has been aware of each of these references since long before the close of fact discovery, and indeed since long before this litigation began. Each of the sixteen identified references is either a Ford internal document, or a U.S. Patent assigned to Ford (or an entity owned by Ford). But despite Ford's knowledge of these references, Ford did not disclose these references in any of its invalidity contentions, or otherwise during fact discovery.

And indeed, when Carrum has raised the untimeliness of these references with Ford's counsel during the meet and confer process, Ford's only justification for the late disclosure was that Ford had allegedly given notice to Carrum that Ford intended to rely on certain of its vehicle systems as prior art. But even accepting Ford's position that it disclosed reliance on certain systems (which are complex

13

vehicle system developed over many years), this is plainly not sufficient for Ford to now rely on any and every document allegedly describing the function of these systems. As such, there can only be one conclusion: Ford acted willfully in violating the Court's scheduling order and the disclosure rules in order to prevent Carrum from having enough time to seek the appropriate discovery required to properly assess Ford's invalidity grounds that rely on and cite these references.

Consequently, this *Pennypack* factor weighs in favor of striking the references, striking the portions of the Messner Report that cite to and rely on the references, and precluding Ford and Dr. Messner from relying on them at trial.

### E.  Excluding The Late-Disclosed References Will Not Prejudice Ford

This *Pennypack* factor also weighs in favor of exclusion. None of the newly disclosed references was important enough to Ford's case to warrant inclusion in any of Ford's three sets of invalidity contentions or any of Ford's interrogatory responses regarding its invalidity positions, even though Ford knew about each and every reference since before this litigation began.

Their lack of importance to Ford's case is further shown by the fact that Ford's invalidity contentions collectively already identified over 150 items of alleged prior art. *See* Exs. C–E. But none of these sixteen references made the cut. Further, Ford has thrown a massive number of invalidity defenses at the wall: at least seven § 103 combinations regarding claims of the '475 patent, and at least sixteen § 103 combinations regarding claims of the '416 patent; four § 112 grounds regarding claims of the '475 patent and three § 112 grounds regarding claims of the '416 patent; and two § 101 grounds (one for each of the '475 and '416 patents). *See* Ex. A, Messner Rept. Even without the defenses based on the untimely references, this is far more than Ford could hope to present at trial. That the defenses based on the untimely references make up a small fraction of Ford's overall defenses shows that excluding the late-disclosed references will not impair Ford's ability to present a fulsome and varied (albeit meritless) set of invalidity defenses. Defenses based on the untimely references would be

14

cumulative at best. As such, striking Ford's and Dr. Messner's reliance on these references and the invalidity defenses based on these references will still leave Ford with myriad invalidity grounds to pursue at trial. Thus, this *Pennypack* factor also weighs in favor of striking the devices as prior art references and precluding Ford and Dr. Messner from relying on them at trial.

## CONCLUSION

For these reasons, the Court should grant Carrum's motion to strike Ford's reliance on these sixteen references (including striking at least the paragraphs of the Messner Report listed above, *see supra* at 3–4) and preclude Ford and Dr. Messner from relying on them at trial.

Dated: March 16, 2023

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Andrew Baak (admitted *pro hac vice*)
John Hughes (admitted *pro hac vice*)
Jason Murray (admitted *pro hac vice*)
Taylor Kelson (admitted *pro hac vice*)
Bartlit Beck LLP
1801 Wewatta Street, Ste. 1200
Denver, CO 80202
Telephone: (303) 592-3100
andrew.baak@bartlitbeck.com
john.hughes@bartlitbeck.com
jason.murray@bartlitbeck.com
taylor.kelson@bartlitbeck.com

Rebecca T. Horwitz (admitted *pro hac vice*)
Mark Levine (admitted *pro hac vice*)
BARTLIT BECK LLP

15

Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
Tel.: (312) 494-4400
Fax: (312) 494-4440
rebecca.horwitz@bartlitbeck.com
mark.levine@bartlitbeck.com

*Counsel for Plaintiff Carrum Technologies, LLC*