## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Carrum Technologies, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 18-1647-RGA-SRF |
| Ford Motor Company, | **FILED UNDER SEAL** |
| Defendant. | |

## CARRUM'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE
## FORD'S RELIANCE ON UNDISCLOSED PURPORTED PRIOR ART

Dated: April 6, 2023

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
Farnan LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Rebecca T. Horwitz (admitted *pro hac vice*)
Mark Levine (admitted *pro hac vice*)
BARTLIT BECK LLP
Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
Tel.: (312) 494-4400
Fax: (312) 494-4440
rebecca.horwitz@bartlitbeck.com
Mark.levine@bartlitbeck.com

Andrew Baak (admitted *pro hac vice*)
John Hughes (admitted *pro hac vice*)
Jason Murray (admitted *pro hac vice*)
Taylor J.S. Kelson (admitted *pro hac vice*)
Bartlit Beck LLP
1801 Wewatta Street, Ste. 1200
Denver, CO 80202
Telephone: (303) 592-3100
andrew.baak@bartlitbeck.com
john.hughes@bartlitbeck.com
jason.murray@bartlitbeck.com
taylor.kelson@bartlitbeck.com

*Counsel for Plaintiff Carrum Technologies, LLC*

# TABLE OF CONTENTS

I.     Ford's Late Disclosure of the Sixteen Documents Is Not Proper ..................................... 2

II.    The *Pennypack* Factors Favor Striking ...................................................................... 4

    A.     Carrum Is Prejudiced by the Late Disclosures ................................................. 4

    B.     Carrum Cannot Cure the Prejudice ................................................................. 6

    C.     Further Fact Discovery Could Disrupt the Trial Schedule ............................... 6

    D.     Ford's Late Disclosure Was Willful ................................................................. 7

    E.     Excluding The Late-Disclosed References Will Not Prejudice Ford ............... 7

III.   Conclusion .................................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**

*Pisony v. Commando Constructions, Inc.*,
    No. 6:17-CV-00055-ADA, 2020 WL 4934463 (W.D. Tex. Aug. 24, 2020) ...........................................6

*Tech Pharmacy Servs., LLC v. Alixa Rx LLC*,
    No. 4:15-CV-766, 2017 WL 3283325 (E.D. Tex. Aug. 2, 2017)....................................................... 3, 4

Plaintiff Carrum has moved to strike all reference to, and all invalidity defenses based on, sixteen Ford documents that were not disclosed as required in invalidity contentions or interrogatory answers. D.I. 200. All but one of these documents relate to what Ford claims is a prior art early version of the Ford Curve Control system, even though Curve Control itself was not used on Ford commercial vehicles until November 2010.

Ford's response to Carrum's motion fundamentally misrepresents Carrum's position. Ford states that "Carrum now asks the Court to preclude Ford from relying on this system art," i.e., pre-2004 Curve Control. D.I. 216 at 1. Not so. Carrum does not dispute that Ford timely identified pre-2004 Curve Control as alleged system art, and Carrum does not object to Ford's reliance on it to the extent that its functionality is documented by properly disclosed references. Carrum seeks to preclude Ford from relying on *the sixteen documents* identified in its motion (all but one of which allegedly describe Curve Control) because they were never identified in any of Ford's invalidity contentions or interrogatory answers as documents that Ford intended to rely on for invalidity. Notably, Ford's response to Carrum's motion does not dispute this lack of disclosure. Ford's broad disclosure of pre-2004 Curve Control as an alleged prior art system does not permit Dr. Messner to belatedly rely on any and all documents that purport to describe this system in support of new and different invalidity arguments.[1]

---

[1] Ford has delayed disclosure and withheld production of materials related to Curve Control in other contexts as well. For example, Ford produced FORD_CARRUM000753379 (which purports to be a 2020 version of the logic description for Curve Control, and is thus directly relevant to Carrum's infringement theories regarding Curve Control in the accused products). Ford produced this document just three weeks before the close of fact discovery, and only *after* Mr. Eisele revealed during his deposition that Ford was in possession of a more recent version of the Curve Control logic description which had not been produced. *See* Ex. I, Eisele Dep. Tr. at 104:15–105:6; Ex. J, Letter from R. Horwitz to L. Spencer (August 25, 2022).

The sixteen documents that are the subject of Carrum's motion fall into three categories: (1) confidential Ford documents which were not exhibits to depositions of Ford witnesses[2]; (2) confidential Ford documents which were exhibits to depositions of Ford witnesses (though Carrum did not know that Ford intended to use them as invalidity references)[3]; and (3) Ford patents.[4] Ford never identified any of these documents as the basis for its invalidity arguments, as it was required to do. Ford does not dispute that it knew about each and every one of these references long before Dr. Messner drafted his report (indeed, long before this litigation commenced).

Carrum moves to strike Ford's reliance on these sixteen documents. At minimum, the Court should strike Dr. Messner's reliance on the first category of documents, because this category represents the greatest unfair prejudice to Carrum.

## I.    Ford's Late Disclosure of the Sixteen Documents Is Not Proper

Carrum does not dispute that Ford disclosed its general "intent to rely on its own stability control systems (including Curve Control) as prior art." D.I. 216 at 15. But this general identification of pre-2004 Curve Control as alleged prior art does not give Ford unlimited license to later rely on any documents and evidence it desires without providing notice to Carrum.

In its discussion of "Ford's Prior Art Disclosures Related to Curve Control," Ford identifies only two references allegedly relating to the prior art version of Curve Control which were timely disclosed by Ford: a 1999 article by Tseng *et al.* titled "The Development of Vehicle Stability Control at Ford," and U.S. Patent 5,742,918 A to Ashrafi *et al.* D.I. 216 at 6–8. Ford's operative invalidity contentions do not chart the Tseng article at all, and rely on the '918 patent as allegedly disclosing only

---

[2] FORD_CARRUM000735506, -738525, -661243, -101895, and -738697.

[3] FORD_CARRUM000736136, -730032, and -730443.

[4] FORD_CARRUM_PUBLIC_00006146, -6160, -6192, -6197, -6304, -6567, -6612, and -6639.

three limitations of asserted claims. *See generally* D.I. 202, Ex. E, at 1–217, 339–532; *see id.* at 18, 484–485, 489.

In sharp contrast to Ford's minimal reliance on allegedly prior art Curve Control as allegedly disclosing just three discrete limitations of the asserted claims in its invalidity contentions, Dr. Messner's opening report identifies pre-2004 Curve Control as the *primary reference* in two obviousness combinations, and as a secondary reference in one additional combination. *See* D.I. 202, Ex. A, at vi–xi (listing combinations). Dr. Messner is not merely providing additional evidentiary support for Ford's existing theories about Curve Control. Dr. Messner advances fundamentally new theories about what Curve Control discloses, theories of which Carrum did not have notice. In doing so, Dr. Messner overwhelmingly relies on documents from among the sixteen that are the subject of Carrum's Motion to Strike, not on the '918 patent or the Tseng article that were cited in the invalidity contentions. *See generally* D.I. 202, Ex. A, at 308–361, 665–951 (highlighting paragraphs which Carrum moves to strike).

While multiple references may properly be relied on as evidence about the functioning of a single prior art system, disclosure of an alleged piece of system prior art does not give a party unlimited license to indefinitely supplement its evidence regarding how that system allegedly functions. *See e.g. Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-CV-766, 2017 WL 3283325, at *4 (E.D. Tex. Aug. 2, 2017) (rejecting defendants' motion to amend invalidity contentions to add additional information about previously disclosed system art, and finding that "Defendants cannot rely on [the previous] description to provide adequate notice to [Plaintiff] of how Defendants planned to use the Envoy system to establish invalidity."). Dr. Messner's reliance on previously undisclosed Curve Control documents is much "more than a mere supplement concerning the [system] prior art." *Id.* As in the *Tech Pharmacy* case, Ford "argue[s] that the [prior art] system is not actually new because it was originally disclosed in their invalidity contentions. However, nothing about the way Defendants disclosed the [prior art] system in their original invalidity contentions supports what Defendants [now]

3

seek[.]" *Id.* Dr. Messner's improper reliance on undisclosed documents in support of his new theories regarding Curve Control should accordingly be stricken.[5]

This is especially true in light of Ford's extensive dilatory discovery conduct. Ford's conduct has impaired Carrum's ability to take discovery directed to Ford's invalidity case (among other issues), and forced Carrum to engage in extensive discovery correspondence over many months seeking (among other things) Ford's production of materials related to Curve Control. *See e.g.* Ex. K, Letter from R. Horwitz to L. Spencer (April 13, 2022); Ex. L, Letter from R. Horwitz to L. Spencer (July 24, 2022); Ex. J, Letter from R. Horwitz to L. Spencer (August 25, 2022); Ex. M, Letter from M. Levine to L. Spencer (September 6, 2022). Indeed, the Court has previously entered an order compelling Ford to produce (among other things) source code relating to Curve Control. D.I. 141, Order Compelling Discovery from Ford (June 21, 2022).

## II.    The *Pennypack* Factors Favor Striking

### A.    Carrum Is Prejudiced by the Late Disclosures

As explained in Carrum's opening memorandum in support of its motion, Carrum will be irreparably harmed if Dr. Messner and Ford are allowed to rely on the newly disclosed references. Purported prior art systems raise unique factual issues for which timely disclosure and an adequate opportunity for discovery and analysis is critical.

---

[5] Dr. Messner's belated reliance on undisclosed documents is also not justified by any unexpected change in Carrum's infringement position to which Ford must now respond. As explained in detail in Carrum's response to Ford's Motion to Strike portions Dr. Shaver's report (being filed concurrently), Carrum has consistently accused Curve Control (as present on the accused vehicles), including the ETR subfunction of Curve Control, as one aspect of the overall system and method that infringe Carrum's patents. *See* D.I. 206 at 3. Ford cites pages of Carrum's operative infringement contentions which describe Curve Control's "use of lateral acceleration to calculate tire forces." D.I. 216 at 4. Ford fails to mention that these pages also cite a Ford document depicting Curve Control's use of lateral acceleration as an input into the ETR subfunction. *See* D.I. 207, Ex. 2 (Carrum's First Supplemental Infringement Contentions) at B-83–84 (citing FORD_CARRUM000730136).

Ford's vague, general "notice of the prior art Curve Control system," D.I. 216 at 17, is insufficient support for Dr. Messner's fundamentally new and different reliance on the system, supported primarily by previously undisclosed documents. And Ford's prior disclosure of its position that "Carrum (and the patentee) had disclaimed claim scope covering prior art stability control systems, such as Curve Control," D.I. 216 at 17, is of no moment—the investigation and discovery required for Carrum to respond to this (meritless) argument regarding disclaimer of claim scope has little overlap with the investigation and discovery required for Carrum to respond to Dr. Messner's reliance on Curve Control as an invalidity reference.

Ford states that it "made available for Carrum's inspection prior art Curve Control source code files corresponding to the produced documents." D.I. 216 at 18 n.18. That is misleading. Ford initially made available for Carrum's inspection three source code files corresponding to Curve Control. The file names of these three files indicate that they correspond to the MY2013 Ford Flex and Taurus, the MY2017 Ford Focus, and the MY2021 Ford Mustang Mach E, none of which are or could be prior art systems.[6]

Subsequently, just days before the close of fact discovery, Ford made available an additional 116 files which it alleged were "prior art Curve Control source code." These files comprised .xls, .c, .h, and .prc file types, and cumulatively comprised at least tens of thousands of lines of code. Some of these files included commented revision histories indicating that at least some of the content was generated prior to the priority date of the asserted patents, but the files were not definitively dated. They included no indication of the interrelationship between the files, or what particular Curve

---

[6] The parties have since stipulated that certain portions of the source code file corresponding to the MY2013 Ford Flex and Taurus are representative of the Curve Control functionality in the accused vehicles. *See* D.I. 184. This stipulation relates to Carrum's reliance on Curve Control in the accused vehicles as part of its infringement case, not to any use of any pre-2004 version of Curve Control as alleged prior art.

Control system the files allegedly corresponded to. Importantly, Ford's invalidity contentions do not cite this (or any) Curve Control source code, and Dr. Messner does not rely on any Curve Control source code (including this alleged "prior art" code) in support of his invalidity opinions. Ford's production of this alleged "prior art Curve Control source code," without explanation and without subsequent reliance in any form, does not constitute disclosure of any invalidity theory involving Curve Control and is irrelevant to the pending motion concerning sixteen documents.

### B.    Carrum Cannot Cure the Prejudice

Fact discovery closed on August 12, 2022, expert discovery closes on April 28, 2023, summary judgment and *Daubert* motions are due on May 15, 2023, and trial is scheduled for November 2023. In view of this timeline, Dr. Messner's reliance on the undisclosed documents is much more than "more specific evidence . . . introduced at a later point" regarding Curve Control. *Pisony v. Commando Constructions, Inc.*, No. 6:17-CV-00055-ADA, 2020 WL 4934463, at *4 (W.D. Tex. Aug. 24, 2020). The undisclosed documents are cited in support of a fundamentally new and different use of Curve Control in Ford's invalidity case. Carrum has no ability to cure the prejudice Ford caused by the late identification of these references, such as by taking deposition testimony from the purported authors and inventors of these references and seeking fact discovery from Ford regarding these references, especially the four Curve Control documents that fall in the first category.

### C.    Further Fact Discovery Could Disrupt the Trial Schedule

Ford is incorrect that "Carrum had ample opportunity to investigate Ford's Curve Control system prior art, and they did so, including in multiple depositions." D.I. 216 at 19. As discussed above, only three of the sixteen documents that are the subject of Carrum's motion (which are three of the seven Ford internal documents) were exhibits to the deposition of a Ford witness. And at the time of these depositions, Carrum was unaware of Ford's intended use of these documents. In any event, Carrum does not "request additional discovery at this late juncture." D.I. 216 at 19. Carrum

requests that the Court strike the portions of the Messner Report that cite to and rely on the untimely references, and preclude Ford and Dr. Messner from relying on them at trial.

### D.    Ford's Late Disclosure Was Willful

Ford's bare assertion that its "disclosure of its Curve Control system prior art was neither late nor willful," D.I. 216 at 19, cannot change the undisputed facts: Ford has been aware of each of these sixteen references since long before the close of fact discovery, and indeed since long before this litigation began. Each of the sixteen identified references is either a Ford internal document, or a U.S. Patent assigned to Ford (or an entity owned by Ford). But despite Ford's knowledge of these references, and despite Ford's knowledge of Carrum's reliance on Curve Control as an aspect of its infringement allegations since the day this case was filed, Ford did not disclose these references in any of its invalidity contentions, or otherwise during fact discovery. These facts are consistent with a single conclusion: Ford's late disclosure was willful.

### E.    Excluding The Late-Disclosed References Will Not Prejudice Ford

Ford's assertion that it should be permitted to rely on these references because "Curve Control functionality categorically predates Carrum's asserted patents," D.I. 216 at 19, is simply untrue. As Dr. Shaver explained in detail in his opening report, development on a predecessor project to Curve Control began in 1998. *See* Ex. N, Shaver Opening Rept. at ¶ 74. But development of Curve Control continued for more than a decade, and the first commercial release of the feature was in the 2011 Ford Explorer. *Id.* Only Curve Control *as it existed on the priority date of the asserted patents* (March 19, 2004) is even arguably a prior art system. And the state of Curve Control as of the priority date is, at best, a disputed issue. Ford continues to baselessly assert that two Curve Control documents[7] predate the priority date of the asserted patents (and thus describe an allegedly prior art version of Curve Control),

---

[7]  FORD_CARRUM000735506 ("ETR Logic Description") and FORD_CARRUM000736136 ("Logic Description Curvature Control Module").

despite extensive evidence that these documents were revised in 2010. *See* D.I. 200 at 10–11; D.I. 216 at 4 n.7. Carrum's lack of opportunity to further investigate this issue (because Ford had not disclosed that it intended to reply on these documents in its invalidity case) is one of the most significant ways in which Carrum has been prejudiced by Ford's lack of disclosure.

The fact remains that Ford has thrown a massive number of invalidity defenses at the wall to see what sticks: at least seven § 103 combinations regarding claims of the '475 patent, and at least sixteen § 103 combinations regarding claims of the '416 patent; four § 112 grounds regarding claims of the '475 patent and three § 112 grounds regarding claims of the '416 patent; and two § 101 grounds (one for each of the '475 and '416 patents). *See* D.I. 201, Ex. A (Messner Rept.). Even without the defenses based on the untimely references, this is far more than Ford could hope to present at trial. That the defenses based on the untimely references make up a small fraction of Ford's overall defenses shows that excluding the late-disclosed references will not impair Ford's ability to present a fulsome and varied (albeit meritless) set of invalidity defenses.

## III.    Conclusion

For these reasons and the reasons set forth in Carrum's opening Memorandum in Support (D.I. 200), the Court should grant Carrum's motion to strike Ford's reliance on these sixteen references (including striking at least the paragraphs of the Messner Report listed in Carrum's opening Memorandum in Support, *see id.* at 3–4) and preclude Ford and Dr. Messner from relying on them at trial.

Dated: April 6, 2023

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Andrew Baak (admitted *pro hac vice*)
John Hughes (admitted *pro hac vice*)
Jason Murray (admitted *pro hac vice*)
Taylor J.S. Kelson (admitted *pro hac vice*)
Bartlit Beck LLP
1801 Wewatta Street, Ste. 1200
Denver, CO 80202
Telephone: (303) 592-3100
andrew.baak@bartlitbeck.com
john.hughes@bartlitbeck.com
jason.murray@bartlitbeck.com
taylor.kelson@bartlitbeck.com

Rebecca T. Horwitz (admitted *pro hac vice*)
Mark Levine (admitted *pro hac vice*)
BARTLIT BECK LLP
Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
Tel.: (312) 494-4400
Fax: (312) 494-4440
rebecca.horwitz@bartlitbeck.com
Mark.levine@bartlitbeck.com

*Counsel for Plaintiff Carrum Technologies, LLC*