# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CARRUM TECHNOLOGIES, LLC

      Plaintiff / Counterclaim-Defendant,

v.

FORD MOTOR COMPANY,

      Defendant / Counterclaimant.

Civil Action No. 18:1647-RGA-SRF

**FORD MOTOR COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO
STRIKE SUPPLEMENTAL DECLARATION OF DR. SHAVER
AND OPINIONS AND EVIDENCE RELATED TO
<u>CARRUM'S DOCTRINE OF EQUIVALENTS THEORY OF INFRINGEMENT</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ................................................................................. 2

III. LEGAL STANDARDS ........................................................................................ 4

IV.  ARGUMENT ...................................................................................................... 5

   A.  The Surprise and Prejudice to Ford Supports Exclusion of Any Opinions
      Based on the Doctrine of Equivalents. .......................................................... 5

   B.  Ford Cannot Cure the Prejudice Without Re-Opening Discovery, Which Will
      Disrupt the Trial Schedule And Result in Unnecessary Duplicated Costs.................... 9

   C.  Carrum Willfully and Purposefully Withheld Its Doctrine of Equivalents
      Infringement Theory.................................................................................... 10

   D.  The Withheld Opinions Are Not So Important as to Weigh Against their
      Exclusion. .................................................................................................. 12

V.   CONCLUSION .................................................................................................. 12

30899359v.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Amneal Pharmaceuticals LLC*,
    No. 1:16-cv-853-MSG, 2018 WL 1885664 (D. Del. Apr. 19, 2018) .......................................9

*Astrazeneca AB v. Mutual Pharm. Co.*,
    278 F. Supp. 2d 491 (E.D. Pa. 2003) .......................................................................................5

*Baltimore Aircoil Co. v. SPX Cooling Techs. Inc.*,
    No. 1:13-cv-2053-CCB, 2016 WL 4426681 (D. Md. Aug. 22, 2016)......................................7

*Best Med. Int'l, Inc. v. Accuray, Inc.*,
    No. 2:10-cv-1043, 2013 WL 3305478 (W.D. Pa. July 1, 2013)..............................................8

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*,
    No. 1:05-cv-132-JJF, 2007 WL 521894 (D. Del. Feb. 15, 2007) ...........................................5

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*,
    No. 3:16-cv-6180, 2017 WL 2630088 (N.D. Cal. June 19, 2017)...........................................7

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
    559 F.3d 1308 (Fed. Cir. 2009)..............................................................................................7

*Finjan, Inc. v. Rapid7, Inc.*,
    No. 1:18-cv-1519-MN, 2020 WL 5798545 (D. Del. Sept. 28, 2020)...........................7, 10, 12

*Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.*,
    224 F.R.D. 644 (N.D. Cal. 2004)...........................................................................................12

*Hochstein v. Microsoft Corp.*,
    No. 2:04-cv-73071, 2009 WL 2498481 (E.D. Mich. Aug. 17, 2009)..................................1, 5

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    No. 1:13-cv-1668-LPS, 2017 WL 658469 (D. Del. Feb. 14, 2017) ....................................6, 8

*Konstantopoulos v. Westvaco Corp.*,
    112 F.3d 710 (3d Cir. 1997).....................................................................................................5

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
    559 F.2d 894 (3d Cir. 1977)............................................................................................4, 5, 10

*Nike Inc. v. Wolverine World Wide, Inc.*,
    43 F.3d 644 (Fed. Cir. 1994)..............................................................................................8, 12

*In re Paoli*,
    35 F.3d 717 (3d Cir. 1994).................................................................................................4

*Rambus, Inc. v. Infineon Techs. AG*,
    145 F. Supp. 2d 721 (E.D. Va. 2001) ...........................................................................8, 9

*Realtime Data, LLC v. Morgan Stanley*,
    554 F. App'x 923 (Fed. Cir. 2014) .................................................................................9

*Reed v. Binder*,
    165 F.R.D. 424 (D.N.J. 1996).........................................................................................4

*Sonos, Inc. v. D&M Holdings, Inc.*,
    No. 1:14-cv-1330-WCB, 2017 WL 5633204 (D. Del. Nov. 21, 2017) ................................4, 7

*Sycamore IP Holdings LLC v. AT&T Corp.*,
    No. 2:16-cv-588, 2017 WL 4517953 (E.D. Tex. Oct. 10, 2017).............................................7

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999)............................................................................................5

*TQ Delta, LLC v. Adtran, Inc.*,
    No. 1:14-cv-954-RGA, No. 1:15-cv-121-RGA, 2020 WL 4529865 (D. Del.
    Jul. 31, 2020)................................................................................................1, 7, 10

*Trustees of Boston Univ. v. Everlight Elecs. Co.*,
    No. 1:12-cv-12326, 2014 WL 12927018 (D. Mass. Sep. 26, 2014)...................................11

*ViaTech Techs., Inc. v. Microsoft Corp.*,
    No. 1:17-cv-570-RGA, 2021 WL 663057 (D. Del. Feb. 19, 2021)...................................7, 11

**Statutes**

Fed. R. Civ. P. 26...........................................................................................................4, 8

Fed. R. Civ. P. 37...............................................................................................................4

## I.      INTRODUCTION

Carrum asks the Court to allow it to add an entirely new doctrine of equivalents (DOE) infringement theory and expert declaration in the middle of summary judgment briefing. This request should be denied. Never before in this case—not in its complaint, its infringement contentions, or its expert reports, or its expert depositions—did Carrum raise this theory. It was not until its summary judgment ***response*** that Carrum raised this new DOE theory—not just the 11th hour but rather at the stroke of midnight in this long-running case. Ford has had no opportunity to test this theory or develop a defense in its own contentions, fact discovery, or expert discovery. If Carrum were allowed to proceed with it, Ford would be severely prejudiced.

Carrum's late DOE theory and late expert "report" on equivalents violates both Fed. R. Civ. P. 26(a) and the Court's Scheduling Order. This Court has not hesitated to forbid plaintiffs from disclosing untimely DOE theories that similarly violated the rules and the Court's schedule. *TQ Delta, LLC v. Adtran, Inc.*, No. 1:14-cv-954-RGA, No. 1:15-cv-121-RGA, 2020 WL 4529865, at *2 (D. Del. Jul. 31, 2020) (citing *Hochstein v. Microsoft Corp.*, No. 2:04-cv-73071, 2009 WL 2498481, at *6 (E.D. Mich. Aug. 17, 2009)) (excluding DOE theory when plaintiff "did not include a DOE argument in its infringement contentions"). That is because "[a] belated attempt to introduce a DOE theory of infringement is 'not a mere correction of information, but instead, creates a new ballgame." *Id.* It would thus severely prejudice Ford—a prejudice that cannot be cured without disrupting the current trial schedule and repeating certain fact and expert discovery at substantial cost to Ford. Having made the tactical choice to go "all-in" on literal infringement throughout discovery, Carrum cannot now flagrantly disregard the disclosure rules to add DOE after fact and expert discovery are closed and in the middle of summary judgment briefing.

## II.     FACTUAL BACKGROUND

Claim 10 of U.S. Patent No. 7,925,416 (the "'416 patent") contains a limitation requiring "a controller . . . operative to reduce vehicle speed according to a vehicle position in the turn" and "operative to determine whether [an] object is in the vehicle path during the turn."  Ex. 1, U.S. Patent No. 7,925,416 at 8:66-9:15.  Carrum's infringement theory for this limitation is clearly set forth in its expert's opening report.  Specifically, its expert—Dr. Gregory Shaver—opined that the "controller" limitation is literally met by *two* controllers: (1) a controller from Ford's Curve Control system (which performs the claimed function of reducing vehicle speed according to a vehicle position in the turn) and (2) the controller from Ford's Long Range Object Sensor ("LROS") system (which performs the function of determining whether an object is in the vehicle path during the turn). [1]  *See* D.I. 264-1, Shaver Opening Expert Report Regarding Infringement ("Shaver Report") at ¶¶ 218-219, 240-251, 273, 297.  Dr. Shaver presented no DOE opinions on the controller limitation.  *Id.*

In rebuttal, Ford's expert, Dr. Messner, provided rebuttal on non-infringement, including that claim 10 requires a single controller that is "(1) 'operative to reduce the vehicle speed according to a vehicle position in the turn'— for which [Carrum] accuses Curve Control; and (2) 'includes control logic operative to determine whether the object is in the vehicle path during the turn'— [for which Carrum] accuses an entirely different component, LROS [from Adaptive Cruise Control]."  *See* Ex. 2, Messner Report Regarding Non-Infringement ("Messner Report"), ¶¶ 440-

---

[1] Ford previously moved to strike this portion of Shaver Opening Report, arguing Dr. Shaver's construction of "said controller" to cover two different controllers is an untimely disclosed infringement theory.  *See* D.I. 207 at 9-12.  Magistrate Judge Fallon, though finding that this theory of infringement is indeed inconsistent with Carrum's position taken in the infringement contentions, denied without prejudice Ford's motion by leaving open a possibility of a limited supplemental claim construction to address this issue.  *See* D.I. 272 at 11-12.

2

442.  Dr. Messner explained that "the accused Ford vehicles have no single controller which [performs the two recited functions]" and therefore do not infringe.  *Id.* at 441; *see also id.* at ¶¶ 432-440.

Carrum responded with a reply expert report from Dr. Shaver ("Shaver Reply Report") that specifically addressed Dr. Messner's non-infringement opinions.  On the "controller" limitation of claim 10, Dr. Shaver maintained his opinion on *literal* infringement.  *See* D.I. 264-2, Shaver Reply Report at ¶¶ 78-79.  Despite being fully aware of both Dr. Messner's interpretation of the "controller" limitation (requiring a single controller performing all functions) and his non-infringement position based on that limitation, Carrum and Dr. Shaver made the decision not to include any DOE theory of infringement.  *See id.*

After expert discovery closed, Ford moved for summary judgment of non-infringement on the controller limitation.  *See* D.I. 261 at 18-19.  Consistent with the Messner Report, Ford argued that its vehicles do not have a controller that performs *both* claimed functions (*e.g.*, determining when the vehicle is in a turn *and* determining whether an object is in the vehicle path during the turn).  *See id.*  Ford further noted that this issue is solely one of claim interpretation, amenable to resolution as a matter of law, and that the parties do not dispute any underlying facts.

In opposition to Ford's motion, Carrum attached a supplemental expert declaration by Dr. Shaver, where he opined for the first time that "Ford Infringes [the controller limitation] Through Doctrine of Equivalents."  *See* D.I. 273 at 11-13 (emphasis added), Ex. 3, D.I. 274-8 (Shaver Declaration).  Since his original report contained no DOE theories, Dr. Shaver's new declaration includes for the first time his understanding of the law of the doctrine of equivalents (paragraphs 8-12), and new opinions on how the "controller" limitations can be met by DOE (paragraphs 12-23).  *See* Ex. 3, Shaver Declaration at ¶¶ 8-23.

None of this had been previously disclosed in the case.  Carrum argues that its DOE theories were disclosed in their contentions (D.I. 273 at 12), but they were not.  It disclosed only generic statements and a circular "incorporation by reference" of its "literal infringement arguments."  Ex. 4, (Final Contentions) at B75-77.  Carrum's reliance on its generic statement in its infringement contentions is legally dubious.  *See Sonos, Inc. v. D&M Holdings, Inc.*, No. 1:14-cv-1330-WCB, 2017 WL 5633204, at *1 (D. Del. Nov. 21, 2017) (collecting cases holding that "boilerplate allegations of infringement under the doctrine of equivalents are insufficient" in infringement contentions).  But regardless, Carrum cannot dispute that none of the analysis contained in paragraphs 12-23 of Shaver's late-disclosed declaration was disclosed in the contentions.  *Compare* Ex. 3 at ¶¶ 12-23 to Ex. 4 at B75-77.

## III.   LEGAL STANDARDS

The Federal Rules of Civil Procedure require experts to provide a written report containing "*a complete statement of all opinions* the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added).  An expert report is "sufficiently complete, detailed and in compliance with the Rules [only if] surprise is eliminated."  *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996).  "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

The determination of whether to exclude evidence is within the discretion of the court.  *See In re Paoli*, 35 F.3d 717, 749 (3d Cir. 1994).  To exercise that discretion and determine if a violation of Rule 26(a) warrants striking undisclosed opinions and evidence, this Court considers the five *Pennypack* factors:

> (1) the prejudice or surprise to a party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood of disruption to

the trial schedule; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) the importance of the evidence to the party offering it.

*Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977)); *In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999). This standard is more readily satisfied in cases involving "sophisticated, complex litigation" and "parties represented by competent counsel." *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, No. 1:05-cv-132-JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007). In such cases, courts are "less indulgent" of a failure to disclose and "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Id.* (citing *Astrazeneca AB v. Mutual Pharm. Co.*, 278 F. Supp. 2d 491 (E.D. Pa. 2003)).

## IV.   ARGUMENT

This case is exactly the kind of "sophisticated, complex litigation" with "parties represented by competent counsel," in which the Court should be "less indulgent" and "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone*, 2007 WL 521894, at *4. But here, the late expert disclosure is egregious and without justification. Each *Pennypack* factor weighs heavily in favor of exclusion. With or without *Bridgestone's* thumb on the scale, this Court should exercise its discretion to exclude Dr. Shaver's late opinions.

### A.   The Surprise and Prejudice to Ford Supports Exclusion of Any Opinions Based on the Doctrine of Equivalents.

Carrum's late DOE theory—if permitted—would severely prejudice Ford. From the beginning, Carrum has litigated this case on a literal infringement theory. A belated attempt to introduce a DOE theory of infringement is "not a mere correction of information, but instead, creates a new ballgame." *Hochstein*, 2009 WL 2498481, at *6. Deficient DOE contentions are "highly prejudicial to Defendants, who lack notice of how their accused products purportedly

5

infringe under the DOE." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 1:13-cv-1668-LPS, 2017 WL 658469, at *4 (D. Del. Feb. 14, 2017).  By holding back this theory until dispositive briefing, Carrum deprives Ford of the chance to depose Carrum's expert on them, and to have Ford's own expert respond to them in due course.  But the prejudice goes deeper than just expert discovery.  DOE theories broaden the scope of claims, which changes the landscape of an invalidity analysis.  Ford also would have investigated prior art based on the broader scope that Carrum asserts under DOE and evaluated potential additional defenses such as ensnarement.  Ford also would have developed non-infringement theories:  DOE requires a showing that the accused product performs the same function in substantially the same way to achieve substantially the same result.  Ford would have developed its own evidence from its witnesses and documents to address these factors.  Finally, Ford would have investigated legal defenses to infringement like prosecution history estoppel.

The prejudice is compounded by Carrum's constantly shifting theories; the new DOE theory is an extension of its shifting literal infringement theory that Magistrate Judge Fallon already determined was untimely.  Specifically, Magistrate Fallon found that Carrum failed to disclose its "two-controller" theory of literal infringement in its final contentions during fact discovery and instead improperly raised it for the first time in Carrum's expert report: "Plaintiff's theory on the meaning of 'said controller' in the Shaver report is *inconsistent* with the position taken in its infringement contentions."  D.I. 272 at 11-12 (emphasis added).  Ford thus already had to reevaluate its case strategy and adjust to one new theory.  Carrum—faced with a summary judgment motion that it cannot overcome—now changes its infringement case again, in the middle of summary judgment briefing, with an untimely supplemental expert declaration on DOE.

This Court has routinely found this factor favors exclusion under similar facts. *See, e.g.*, *TQ Delta*, 2020 WL 4529865 at *2 (finding this factor favors exclusion when "Defendant would need to present new defenses for the asserted DOE theories."); *ViaTech Techs., Inc. v. Microsoft Corp.*, No. 1:17-cv-570-RGA, 2021 WL 663057, at *2-3 (D. Del. Feb. 19, 2021) (finding this factor favors exclusion because "[t]he injection of new theories into the case have prejudiced Defendant, which did not have the opportunity during the previously closed fact discovery to 'take any discovery on the factual bases of these new theories' nor 'develop[] its own factual record, for example, marshaling evidence of ensnarement or non-equivalence related to the new DOE theories."); *Finjan, Inc. v. Rapid7, Inc.*, No. 1:18-cv-1519-MN, 2020 WL 5798545, at *5 (D. Del. Sept. 28, 2020).

Carrum claims in its summary judgment opposition that there is no prejudice because its DOE theory was "preserved" in Carrum's operative infringement contentions. *See* D.I. 273, at 12. But Carrum's so-called "preservation" includes nothing more than boilerplate language and does not delineate *how* Carrum is applying the DOE infringement theory. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). Courts consistently reject efforts to "preserve" arguments with "boilerplate" reservations. *See Sonos, Inc.* 2017 WL 5633204, at *1 (holding that "boilerplate allegations of infringement under the doctrine of equivalents are insufficient" in infringement contentions); *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-cv-588, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) (boilerplate allegations of infringement under the doctrine of equivalents are insufficient); *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, No. 3:16-cv-6180, 2017 WL 2630088, at *5 (N.D. Cal. June 19, 2017) (same); *Baltimore Aircoil Co. v. SPX Cooling Techs. Inc.*, No. 1:13-cv-2053-CCB, 2016 WL 4426681, at *15 (D. Md. Aug. 22, 2016) ("[P]lace-holder boilerplate language will not suffice" to preserve a doctrine

7

of equivalents theory of infringement.); *Best Med. Int'l, Inc. v. Accuray, Inc.*, No. 2:10-cv-1043, 2013 WL 3305478, at *2–3 (W.D. Pa. July 1, 2013) (contentions regarding the doctrine of equivalents cannot be "reserved" until the close of discovery); *see also Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 728 (E.D. Va. 2001) ("The unilateral assertion of a 'reservation of rights,' . . . simply is of no effect."). That is because boilerplate reservations do not achieve the central function of contentions: to "explain 'how the accused products perform the same function in substantially the same way to achieve substantially the same result.'" *Intellectual Ventures I LLC*, 2017 WL 658469, at *3. In such circumstances, the Federal Circuit has rejected such efforts to rely on boilerplate contentions. *See e.g.*, *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 648-49 (Fed. Cir. 1994) (precluding Nike from later relying on doctrine of equivalents when Nike only raised a "potential" that it might assert this claim "in the future" and when Nike delayed disclosing this theory violating discovery order). Carrum's reliance on its own boilerplate reservation should be rejected. And whatever the merits of Carrum's boilerplate, that conclusory reservation cannot save Dr. Shaver's expert opinions, which must comply with the requirements of Fed. R. Civ. P. 26(a).

Regardless, Magistrate Judge Fallon's ruling on the "two controller" theory ends any argument that DOE on that limitation was disclosed in the contentions. In her (unobjected-to) ruling, Magistrate Judge Fallon specifically found that Carrum had not disclosed the "two-controller" literal infringement theory in its contentions. Logically, Judge Fallon's ruling precludes any argument that those contentions could have disclosed DOE as an alternative to that "two-controller" literal infringement theory.

Even without her ruling, a simple comparison proves that none of the "evidence" in Dr. Shaver's late declaration is included in Carrum's contentions. *Compare* Ex. 3, Shaver Declaration

*with* Ex. 4, Final Contentions at B75-77.  It contains new theories and new "evidence" that Ford

has was not permitted to investigate during discovery.

### B. Ford Cannot Cure the Prejudice Without Re-Opening Discovery, Which Will Disrupt the Trial Schedule And Result in Unnecessary Duplicated Costs.

The prejudice to Ford cannot be cured without re-opening discovery and abandoning the

current schedule.  Fact discovery closed almost a year ago, on August 12, 2022.  Expert reports

have been exchanged and the parties' experts were deposed months ago.  To mitigate against this

prejudice, Carrum argues that a "brief supplemental expert analysis" or a "short rebuttal report on

the issue by Ford's expert" will resolve the prejudice.  Not so.  Many courts and the Federal Circuit

have routinely found that the prejudice in similar circumstances is more significant and cannot be

cured.  *See, e.g.*, *Realtime Data, LLC v. Morgan Stanley*, 554 F. App'x 923, 937-38 (Fed. Cir.

2014) ("[B]ecause Realtime asserted such contentions after fact discovery had closed, the

Defendants were prejudiced from developing adequate discovery and developing theories of

noninfringement under the doctrine of equivalents."); *Amgen Inc. v. Amneal Pharmaceuticals LLC*,

No. 1:16-cv-853-MSG, 2018 WL 1885664, *7 (D. Del. Apr. 19, 2018) ("There are multiple ways

[the defendant] could have taken a different approach to the litigation had [the plaintiff] timely

asserted the doctrine of equivalents against it, from having its own expert opine on the theory to

pursuing different avenues of discovery."); *Rambus*, 145 F. Supp. 2d at 729 ("As to the doctrine

of equivalents, there is no effective opportunity to cure the prejudice or surprise unless there is a

continuance so that Infineon can prepare to defend against an entirely new theory of infringement,

including gathering information on prosecution history estoppel and interchangeability.").

To "cure" the prejudice of this "new ballgame," fact and expert discovery would effectively

need to start over.  Ford would need to : (1) identify potential new witnesses, including from third

parties (2) identify additional documents and redo its own contentions (3) have its own expert

9

perform an entirely new analysis (4) re-depose Carrum's expert, (5) identify and analyze prior art based on the broader scope that Carrum asserts under DOE for purposes of rebutting DOE with an ensnarement argument, (6) evaluate potential additional defenses such as non-equivalence and/or prosecution history estoppel in response to the new DOE infringement theory, and (7) consider whether the changed scope of alleged infringement impacts any of the damages analysis.  That is not a "brief supplemental expert analysis" or a "short rebuttal report" as Carrum claims—it is a complete redo of the case.

With less than five months until trial, re-opening fact and expert discovery would disrupt the current trial schedule.  *See, e.g.*, *TQ Delta*, 2020 WL 4529865 at *2 (finding that second and third *Pennypack* factors favor exclusion because "re-opening discovery to give Defendant an opportunity to cure the prejudice would only disrupt the schedule further."); *Finjan*, 2020 WL 5798545 at *4 ("While the prejudice to Rapid7 is partially curable through responsive expert reports and expert depositions, at least some of the prejudice remains because fact discovery is closed and there is no time to reopen fact discovery under the schedule.").  The only cure would be to disrupt the current trial schedule, without which would be manifestly unfair to Ford and a tremendous drain on the Court's own resources.  As detailed above, the extensive redo of discovery required would substantially increase Ford's costs in defending this case.

Because this prejudice is so substantial and would require postponing trial and increasing Ford's costs, this factor weighs heavily in favor of excluding all opinions and evidence related to the DOE.

### C.    Carrum Willfully and Purposefully Withheld Its Doctrine of Equivalents Infringement Theory.

Carrum had multiple opportunities to supplement its theory of infringement to include the DOE opinions:

1) Carrum could have done so during fact discovery as fact discovery was open for another 3 months after Carrum had served its supplemental infringement contentions.

2) Carrum could have articulated this theory of infringement in its Opening Expert Report, which Carrum served five months after close of discovery.

3) Carrum could have raised it in Dr. Shaver's Reply Expert Report, having learned of Ford's non-infringement position on the "controller" limitation through Ford's Expert Report Regarding Non-Infringement.

Each opportunity passed without asserting the DOE infringement theory.  The exchange of expert reports is now completed, expert depositions have taken place, and discovery is now closed.

Again, knowing its belated declaration was prejudicial, Carrum claims that Ford never identified its non-infringement argument on the "a controller" and "said controller" terms and Ford's summary judgment motion is what gave rise to Carrum's DOE infringement theory.  *See* D.I. 273 at 9.  The record speaks otherwise.  Ford laid out its non-infringement position on the "controller" limitation, in its Messner Report, long before Ford's summary judgment motion.  *See, e.g.,* Ex. 2 at ¶¶ 432-442.  As discussed above, Carrum and Dr. Shaver had several opportunities to opine on its DOE infringement theory and failed to do so, making clear that Carrum was not pursuing a DOE theory of infringement.  This shows, at a minimum, that Carrum knowingly withheld disclosing this theory despite having multiple opportunities to do so.  *ViaTech*, 2021 WL 663057 at *5 (finding that "Plaintiff's experienced lawyers [] springing clearly new [DOE] theories on a defendant . . . approach[es] that [bad faith] standard.").

Regardless, "[a] party may not excuse its failure to comply with discovery obligations by claiming that its opposing party is similarly delinquent."  *Trustees of Boston Univ. v. Everlight Elecs. Co.*, No. 1:12-cv-12326, 2014 WL 12927018 (D. Mass. Sep. 26, 2014); *Fresenius Med.*

*Care Holding, Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 652 (N.D. Cal. 2004) (same). **Carrum**—not Ford—brought this patent case. **Carrum**—not Ford—has the burden to prove infringement. **Carrum**—not Ford—had the obligation to investigate, identify, and pursue an infringement theory. *Cf. Nike*, 43 F.3d at 649 ("If Nike needed more time to substantiate its infringement claim, it could have delayed filing suit until its factual investigation was completed or requested more time for discovery."). Carrum cannot excuse its failure by relying on Ford's (timely) motion pointing out an obvious failure in Carrum's proofs.

Accordingly, this factor also weighs in favor of exclusion.

### D. The Withheld Opinions Are Not So Important as to Weigh Against their Exclusion.

Carrum's DOE opinions are not so important that they weigh against exclusion. Carrum has other claims pending (*e.g.*, claim 5 of the '475 Patent and claim 6 of the '416 Patent) that do not rely on DOE. Accordingly, striking the late-disclosed DOE theories only applies to claims 10-12 of the '416 Patent. Carrum will be able to pursue literal infringement of those claims, as well as its arguments on other claims. *See Finjan*, 2020 WL 5798545 at *4 (finding that this factor weighs in favor of exclusion when "[s]triking the new disclosures will not leave Finjan without an infringement case."). Accordingly, this factor also weighs in favor of exclusion.

## V. CONCLUSION

This Court should strike all of Carrum's assertion of the doctrine of equivalents theory of infringement and preclude Carrum from relying on the supplemental expert declaration of Dr. Shaver on the doctrine of equivalents.

Dated: July 17, 2023

By:    */s/ Daryll Hawthorne-Bernardo*
        Christian J. Singewald [Bar. No. 3542]
        Daryll Hawthorne-Bernardo [Bar. No.: 6520]
        White and Williams LLP
        Courthouse Square
        600 N. King Street, Suite 800
        Wilmington, DE 19801-3722
        Phone: (302) 654-0424
        singewaldc@whiteandwilliams.com
        hawthorned@whiteandwilliams.com

        Frank C. Cimino, Jr.
        Megan S. Woodworth
        Charles J. Monterio, Jr.
        Jonathan L. Falkler
        Robert Tapparo
        VENABLE LLP
        600 Massachusetts Avenue, NW
        Washington, DC 20001
        Phone: (202) 344-4569
        FCCimino@Venable.com
        MSWoodworth@Venable.com
        CJMonterio@Venable.com
        JLFalkler@Venable.com
        RCTapparo@Venable.com